UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARENCE JONES,

    Petitioner,

v.                                          Case No.  8:10-cv-2803-T-17TBM

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.
_____

## **ORDER**

This cause is before the Court on Petitioner Clarence Jones's timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus.  Jones challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## **PROCEDURAL HISTORY**

On February 24, 2003, an information was filed charging Jones with 1) obstructing or opposing an officer with violence, 2) possession of cocaine with intent to deliver within 1,000 feet of a school, 3) possession of cannabis, and 4) possession of drug paraphernalia. (Exhibit 1, pg. 14-18). On March 1, 2004, a jury trial was conducted. (Exhibit 2, pg. 1). Jones was found guilty of 1) obstructing or opposing an officer without violence, 2) possession of cocaine with intent to deliver within 1,000 feet of a school, 3) possession of cannabis, and 4) possession of drug paraphernalia. (Exhibit 2, pg. 255). Jones was sentenced to thirty years incarceration with a three year minimum mandatory sentence.

(Exhibit 2, pg. 269).

## Direct Appeal

Jones pursued an appeal of his convictions and sentences. On March 23, 2005, Jones's appellate attorney, Assistant Public Defender, Douglas S. Connor, filed an Initial Brief on behalf of Jones raising the following issues:

> ISSUE ONE. THE EVIDENCE WAS INSUFFICIENT TO PROVE THAT APPELLANT INTENDED TO SELL OR DELIVER THE COCAINE THAT HE POSSESSED.
>
> ISSUE TWO. OFFICER MAYO'S OPINION THAT THE COCAINE POSSESSED BY APPELLANT WAS INTENDED FOR SALE INVADED THE PROVINCE OF THE JURY.

(Exhibit 3). The State filed an Answer Brief on October 3, 2005. (Exhibit 4). On October 31, 2005, appellate counsel filed a reply brief. (Exhibit 5). On January 20, 2006, in Case No. 03-CF-001845, 2D04-2044, the Second District Court of Appeal filed an unwritten per curiam opinion affirming Jones's judgment and sentences. *See Jones v. State*, 923 So.2d 1171 (Fla. 2d DCA 2006)(Table). (Exhibit 6). The mandate issued March 27, 2006. (Exhibit 7).

## Rule 3.850 Motion for Postconviction Relief

On June 30, 2006, Jones filed a pro se Motion for Postconviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 8). On October 11, 2007, the postconviction court entered an order ordering the State to respond to ground three(a) and ground five(a). (Exhibit 9). On October 16, 2007, the State filed its response conceding that an evidentiary hearing was necessary. (Exhibit 10). On October 29, 2007, the postconviction court ordered an evidentiary hearing. (Exhibit 11). On May 8, 2008, an evidentiary hearing was conducted. (Exhibit 12). On June 24, 2008, the postconviction

court entered its final order denying grounds three and five. (Exhibit 13).

Jones appealed the adverse rulings. On November 5, 2008, Jones's appellate attorney, Assistant Public Defender, Susan J. Best, filed an *Anders* Initial Brief. (Exhibit 14). On November 25, 2008, Jones filed a pro se initial brief. (Exhibit 15). On December 12, 2008, the State filed its *Anders* Answer Brief. (Exhibit 16). On May 29, 2009, Jones filed a post *Anders* pro se initial brief. (Exhibit 17). On February 12, 2010, in Case No. 2D08-3504, the Second District Court of Appeal filed an unwritten per curiam opinion affirming the lower court's denial of postconviction relief. See *Jones v. State*, 27 So.3d 666 (Fla. 2d DCA 2010)(Table). (Exhibit 18). The mandate issued March 11, 2010. (Exhibit 19).

Jones then filed the present federal 28 U.S.C. § 2254 federal petition and a supplement to the petition, raising a total of five grounds for relief.

## STANDARDS OF REVIEW

### The AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, --- U.S.--- ,129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Id.* (quotation marks omitted).

### DISCUSSION

### GROUND ONE

Jones claims the evidence was insufficient to prove that he intended to sell or deliver the cocaine in his possession.

In Florida, a motion for judgment of acquittal should be denied unless the evidence, taken in the light most favorable to the state, is such that no view the jury may lawfully take of it can be sustained under the law. *Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005). Additionally, in moving for a judgment of acquittal the defendant admits not only the facts adduced at trial, but every reasonable inference based on those facts that the jury could make in favor of the state. *Washington v. State*, 737 So.2d 1208, 1211 (Fla. 1st DCA

1999), citing, *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974).

> Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

Id.

During the State's case in chief, the following evidence was adduced at trial. Officer Miles was on routine patrol when he discovered that Jones had an outstanding warrant. (Exhibit 2, pg. 120-124). Officer Miles radioed Officer Krupa for back-up. (Exhibit 2, pg. 120-124). Officer Miles and Officer Krupa were wearing their uniforms during the incident with Jones. (Exhibit 2, pg. 122). Officers identified themselves to Jones. (Exhibit 2, pg. 123). Jones struggled when the officers attempted to take him into custody. (Exhibit 2, pg. 123-125). Officer Miles observed Jones pull out a clear bag from his pocket, which appeared to contain a "white substance." (Exhibit 2, pg. 126). Officer Miles observed Jones "reach in his pocket and pull it out and started popping it up in the air." (Exhibit 2, pg. 139, 140). Defense counsel made a motion for judgment of acquittal and argued that there was no evidence that Jones intended to sell or deliver the narcotics. (Exhibit 2, pg. 174-175). Defense counsel cited *McCollough v. State*, 541 So.2d 720 (Fla. 4th DCA 1989), and argued that there was only circumstantial evidence presented. (Exhibit 2, pg. 175).

The State argued that *McCollough* was distinguishable from Jones's case and based on a totality of the circumstances and in the light most favorable to the State, the State provided evidence that Jones intended to sell or deliver the narcotics. (Exhibit 2, pg. 176).

The trial court denied the motion for judgment of acquittal. (Exhibit 2, pg. 176).

Defense counsel rested the defense's case. (Exhibit 2, pg. 178). Defense counsel argued in closing arguments that there was no evidence presented as to Jones's intent. (Exhibit 2, pg. 187). Defense counsel argued that Jones did not engage in illegal activity prior to entering the store. (Exhibit 2, pg. 187-188).

Jones claims that the evidence was insufficient to prove his intent to sell the cocaine in his possession. However, questions of intent are for the jury to determine. *Jones v. State*, 192 So.2d 285 (Fla. 3d DCA 1966). Determinations of credibility and the probative value of "conflicting" testimony should not be determined upon a motion for judgment of acquittal and are questions for the jury. *Lynch v. State*, 293 So.2d 44 (Fla. 1994). If the trial court concludes that there is a prima facie inconsistency between the evidence and the defense theory or theories, then the finder of fact must resolve the issue. *Orme v. State*, 677 So.2d 258, 262 (Fla. 1996).

Based on the facts of this case and construing those facts in the light most favorable to the State, a rational trier of fact could have found Jones guilty of possession of cocaine with the intent to sell or deliver. Consequently, the ruling of the state court in this case did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Ground one does not warrant habeas corpus relief.

## GROUND TWO

Jones alleges that Officer Mayo's testimony indicating that the cocaine Jones

possesed was not for personal use invaded the province of the jury. Officer Mayo testified that he had been involved in over a thousand narcotics investigations. (Exhibit 2, pg. 154-155). Officer Mayo testified that he has previously on "many occasions" testified in court and given opinions about distribution amounts versus personal consumption amounts of drugs. (Exhibit 2, pg. 156). Officer Mayo testified that there were forty-five pieces of crack cocaine recovered in the incident with Jones. (Exhibit 2, pg. 164). The approximate street value for that amount is $900 or more. (Exhibit 2, pg. 165). Officer Mayo testified specifically:

> [The State]: Officer, based upon -- you were focusing your attention on the cocaine in question, based upon the currency and don't tell us what that was but that knowledge that you have and based upon the quantity of cocaine, the way it was packaged, the absence of any type of device to ingest that cocaine State's Exhibit One is that consistent with the distribution or consistent with a person using?
>
> [Defense counsel]: Objection, your Honor.
>
> THE COURT: I'll overrule the objection at this time, go ahead.
>
> [Officer Mayo]: Based on my opinions and my experience over the years there is no question that was for distribution purposes. There was so much with the money and the lack of a crack pipe, that's a lot of crack cocaine.

(Exhibit 2, pg. 165).

Officer Mayo testified that he has found dealers with powder cocaine and crack cocaine but, has never found someone with powder and crack cocaine at the same time. (Exhibit 2, pg. 167). Officer Mayo testified that it would take a very long time to smoke fifteen grams of cocaine. (Exhibit 2, pg. 168). The officer stated it would take "maybe a couple of days." (Exhibit 2, pg. 169). However, Officer Mayo conceded that he could not tell for sure whether it could be smoked in an hour by a severe addict. (Exhibit 2, pg. 169-

7

172). Officer Mayo testified that he has never seen this amount of crack cocaine used for personal use. (Exhibit 2, pg. 172).

Absent an abuse of discretion, an appellate court will not reverse a trial court's admission of expert testimony. *Burns v. State*, 609 So.2d 600, 603 (Fla. 1992). A trial court has broad discretion in admitting expert testimony and in determining the range of subjects on which an expert witness may testify. *Id.*

*Luis v. State*, 851 So.2d 773 (Fla. 2d DCA 2003) is instructive on this issue. In *Luis,* the Second District Court addressed the proper scope of an officer's testimony as an expert witness. Id. at 777. The officer testified regarding the factors that should be considered in deciding whether a quantity of narcotics is for personal use or for sale. *Id.* The officer testified as to the circumstances surrounding Luis's possession and what he would expect to find on a typical drug user. *Id.* The Second District Court found that this testimony was admissible once the officer was qualified as an expert in street-level narcotics transactions. *Id.* "A qualified expert **may** testify that the quantity and packaging of drugs and the circumstances surrounding their possession are 'consistent with' possession for sale or are 'inconsistent with' possession for personal use." *Id.* (emphasis added).

Similarly, Officer Mayo was qualified as an expert, albeit over defense objection. Officer Mayo did not testify that in his personal opinion Jones intended to sell the cocaine. Officer Mayo testified as to the street value amount of the forty-five rocks of crack cocaine found. Office Mayo testified as to what he collected at the scene. Officer Mayo testified that forty-five rocks of cocaine, the packaging of the narcotics, the money found, and the lack of an instrumentality for ingestion of the crack cocaine was consistent with distribution. This testimony does not invade the province of the jury and consequently, the ruling of the state

8

court in this case did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Ground two does not warrant habeas corpus relief.

## GROUND THREE

Jones claims counsel was ineffective for failing to request a *Richardson* hearing when the State failed to designate Officer Mayo as a proposed expert witness.

In ruling on this issue, the state trial court stated:

> In ground three(a), Defendant alleges ineffective assistance of counsel due to counsel's failure to request a *Richardson* hearing based on the State's discovery violation. Specifically, Defendant alleges in its pre-trial discovery, the State listed Officer Thomas Mayo as a standard Category A witness, without designating him as an expert witness. However, at trial, Defendant alleges the State then moved to qualify Officer Mayo as an expert in street-level narcotics transactions and then elicited testimony from him as to the essential element of intent. Defendant alleges had counsel moved for a *Richardson* hearing, such would have resulted in a continuance to allow the defense to properly prepare for Officer Mayo's testimony and alter the defense strategy. The Court notes that the Second District Court of Appeal has held that, in the State's notice of discovery, the failure to designate a witness as an expert constitutes a discovery violation that warrants a *Richardson* hearing. See *Luis v. State*, 851 So.2d 773 (Fla. 2d DCA 2003).
>
> At the evidentiary hearing, Defendant admitted that Mr. Kuske objected to Officer Mayo being able to testify as an expert. (See May 8, 2008, transcript, p. 12, trial transcript, p. 107, attached). However, he testified that Mr. Kuske failed to present any caselaw to the Court, failed to argue the law required experts to be specifically identified, and failed to request a *Richardson* hearing. (See May 8, 2008, transcript, pps. 12-13, attached). He further testified that Mr. Kuske was surprised Officer Mayo was going to be testifying as an expert. (See May 8, 2008, transcript, p. 13 attached).
>
> At the same hearing, Mr. Kuske testified, and when asked to explain what he did when the prosecutor Curt Allen offered Officer Mayo as an expert, he responded as follows:

9

> KUSKE: I thought - - again, I thought it was wrong. I objected to it. What the Judge did at that point was gave me an opportunity to voir dire the - - witness well, actually, I requested that. And I went through what I thought was ample enough to help our case. In other words, show that again - - and again, this is all part of the overall picture of a trial. That law enforcement is exaggerating. That they're kind of reaching. That this isn't what it was. Much like he didn't attack law enforcement, and didn't resist with violence; which we won that issue. This was all part of your overall strategy. By talking to that particular alleged expert, and me asking him questions such as, having my own experience, knowing what the preeminent drug schools are, knowing what you need - - Did you go to DEA school? No. Did you go to this school? No. How long is this? I don't know. I don't know. I don't know. I felt that at the end of that, it kind of put fourth [sic] our general strategy, which was they didn't know. They were guessing. The [sic] were assuming. And they were overreaching. Now, obviously to some extent that worked, because I think, if I recall correctly, one of the law enforcement officers had a chipped tooth based on the fight in the store, and they found him not guilty of the resist with violence. So it was part of that overall, the cops just don't have it, their making up some stuff, they are reaching, they're stretching. And that's why we did it that way, because once I started getting what I thought was good answers from the alleged expert - - when I say good answers; answers that show that he didn't know what he was talking about, that he wasn't experienced, that he wasn't an expert - - we preserved the objection, and then I told the Judge that, you know, obviously, this man did not show to be an expert. I was overruled. And he was allowed to testify anyway.

(See May 8, 2008, transcript, pps. 32-34, attached). Moreover, Officer Mayo testified there were forty-five pieces of rock of cocaine that made up the 12.4 grams. (See trial transcript, p. 164, attached).

On cross-examination, he testified that he was aware of the caselaw from the Second District Court of Appeal standing for the proposition that if the State did not specifically list someone as an expert, it was a discovery violation, and stated that is why he objected to it, but did not recall advising the Court it was a *Richardson* issue. (See May 8, 2008, transcript, pps. 52-53, attached). He further testified that despite the fact that he did not ask for a *Richardson* hearing, he thought he got his point across to the jury that Officer Mayo did not know what he was talking about. (See May 8, 2008, transcript, p. 54, attached). Additionally, Mr. Kuske objected during the

10

prosecutor's closing argument that the testimony was that the drugs were repackaged to explain to the jury why the additional baggies were there. (See trial transcript, pps. 208-209, attached).

During rebuttal, Defendant testified that he thought Mr. Kuske should have asked the Court for leeway in terms of either hiring an expert or having additional time to depose Officer Mayo since he had not deposed him and he was now a key witness. (See May 8, 2008, transcript, p. 57, attached).

After reviewing the allegations, the testimony, evidence, and argument presented at the May 8, 2008, evidentiary hearing, the court file, and the record, the Court finds Mr. Kuske objected to Officer Mayo testifying as an expert. The Court further finds that once Mr. Kuske objected, the Court allowed Mr. Kuske, in the presence of the jury, to voir dire Officer Mayo on his qualifications as an expert. The Court further finds after Mr. Kuske renewed his objection to Officer Mayo testifying as an expert, the Court overruled Mr. Kuske's objection.

Moreover, the Court finds the jury was instructed as follows:

> Expert witnesses are like other witnesses, with one exception — the law permits an expert witness to give his or her opinion.
>
> However, an expert's opinion is only reliable when given on a subject about which you believe him or her to be an expert.
>
> Like other witnesses, you may believe or disbelieve all or any part of an expert's testimony.

(See jury instruction 3.9(a) expert witnesses, attached). Therefore, based on the fact that the jury was instructed it could disregard Officer Mayo's testimony, the Court finds that despite Mr. Kuske's failure to ask for a *Richardson* hearing, Mr. Kuske's voir dire of Officer Mayo sufficiently demonstrated to the jury that Officer Mayo was not the expert the State alleged him to be, thereby giving the jury ample justification to disregard his opinions. Consequently, the Court finds Mr. Kuske made a strategic decision not to pursue the matter further because he thought he got his point across to the jury that Officer Mayo was not an expert. Therefore, Defendant failed to demonstrate how counsel's alleged deficient conduct resulted in prejudice when Mr. Kuske demonstrated to the jury that Officer Mayo was not an expert and the jury instructions allowed the jury to disregard Officer Mayo's opinions. As such, no relief is warranted upon this claim.

The state postconviction court reasonably and correctly rejected Jones's claim, after

holding an evidentiary hearing, finding Jones had not demonstrated prejudicial performance under *Strickland*.

A claimant is not entitled to relief if the claim of ineffectiveness merely expresses disagreement with counsel's strategy. *Marquard v. State*, 850 So.2d 417 (Fla. 2002)(denying ineffective assistance claim for failing to call a witness when defense counsel reasonably feared the witness would implicate the defendant in the crime). "Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State,* 769 So.2d 990, 1001 (Fla. 2000), *citing Remeta v. Dugger*, 622 So.2d 452 (Fla. 1993). "Strategic decisions do not constitute ineffective assistance if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Stewart v. State*, 801 So.2d 59, 65 (Fla. 2001), *quoting Occhicone v. State*, 768 So.2d 1037, 1048 (Fla. 2000).

Jones has the burden of proving that counsel's approach "would have been used by no professionally competent counsel." *State v. Williams*, 797 So.2d 1235, 1239 (Fla. 2001). "Tactical or strategic decisions of counsel do not justify post conviction relief." *Gonzalez v. State*, 579 So.2d 145 (Fla. 3d DCA 1991). Moreover, "even where the tactical decision evinces bad judgment, relief is not justified." *Id.*

An examination of the record supports the postconviction court's factual findings and the reasonableness of the court's legal conclusion. Based upon this record, Jones has not shown that his attorney's alleged deficiency rendered the result of his trial unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)(The prejudice component of *Strickland* focuses on the question of whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally

unfair.")(citations omitted).

Jones has not established that the court's determination was contrary to or involved an unreasonable application of United States Supreme Court law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Jones has not shown counsel was ineffective.

Ground three does not warrant habeas corpus relief.

## GROUND FOUR

Jones claims counsel was ineffective for failing to present a substance abuse counselor to testify that the amount of narcotics "found on Jones" could be consistent with personal use.

In denying this claim, the state trial court stated:

In ground five (a), Defendant alleges ineffective assistance of counsel due to counsel's failure to call an expert witness skilled and certified in substance abuse and addictions treatment. Defendant alleges had counsel called such a witness, the witness would have been able to provide testimony that the amount of 12.4 grams of cocaine is an amount consistent with personal use, not sale, and would have rebutted the testimony of the State's expert witness who mischaracterized the amount of grams of cocaine seized as 22 grams.

At the evidentiary hearing, when asked what he believed the expert witness could have testified to, he responded as follows:

> JONES: I had a substance abuse problem. I was dealing with, you know, smoking cocaine, and marijuana. And a substance abuse counselor could have came in and reflected to the courts that the amount of cocaine that I had was, in fact, in the realms of a possible user, and not against, you know, distribution. And being that - - this expert tell me - - well, okay. This expert testimony could have been a key testimony for the jury to prove to the jury that 12.4 grams, and not the 22 grams, is in the realms of personal consumption.

(See May 8, 2008, transcript, pps. 18-19, attached). He further testified Mr. Kuske did not discuss with him any drug treatment or evaluation, did not tell him that he consulted with any person who provides drug treatment counseling or evaluation during the course of the case, and did not talk to him about DACCO. (See May 8, 2008, transcript, p. 19, attached). However, he testified that after his trial, he learned that such a person treats patients who have substance abuse problems and could have testified to that type of information. (See May 8, 2008, transcript, p. 19, attached).

At the evidentiary hearing, Mr. Kuske testified that he has never actually used an expert to testify that the amount was consistent with personal consumption than with sale, and explained as follows:

> KUSKE: I think that could be kind of dangerous. You could start - - I mean - - well, there's two things. One, is I've never used one. And I don't know of one, and I'm pretty experienced. And two, is if somebody came forth and said that they was willing to say that, I think you could get ugly. Because then, obviously, if they're going to guess that this is consistence [sic], it could also be consistence [sic] with sale, and you might be getting into some water's [sic] - - unchartered water's [sic] with somebody who's not commonly used.

(See May 8, 2008, transcript, p. 36, attached). He further testified that another consideration was that if he called an expert, he would lose first and last closing, and in a drug case, first and last closing is very important. (See May 8, 2008, transcript, pps. 36-37, attached).

During rebuttal, Defendant testified that he advised Mr. Kuske that he had a substance abuse problem and he expected Mr. Kuske would argue to the jury that this was a personal problem and that he was not a drug dealer. (See May 8, 2008, transcript, p. 58, attached).

After reviewing the allegations, the testimony, evidence, and argument presented at the May 8, 2008, evidentiary hearing, the court file, and the record, the Court finds Defendant never asked Mr. Kuske to call an expert witness skilled and certified in substance abuse and addictions treatment. The Court further finds based on Mr. Kuske's testimony, Mr. Kuske has never used such an expert, and would probably not use such an expert as the testimony would be consistent with both use and sale, and such testimony would not be worth losing both first and last closing with the jury. Additionally, the Court finds Defendant failed to present any expert testimony to substantiate his claim that such an expert would have testified that the 12.4 grams of cocaine is an amount consistent with personal use, not sale, and who would have rebutted the testimony of the State's expert witness who

14

> allegedly mischaracterized the amount of grams of cocaine seized as 22 grams. Therefore, the Court finds Defendant failed to demonstrate how counsel's deficient conduct resulted in prejudice when he has failed to produce such an expert witness who would have provided the alleged testimony. As such, no relief is warranted upon this claim.

The state postconviction court reasonably and correctly rejected Jones's claim, after holding an evidentiary hearing, finding Jones had not demonstrated prejudice under *Strickland.* An examination of the record supports the postconviction court's factual findings and the reasonableness of the court's legal conclusion.

In addition, a claim of ineffectiveness will fail where a defendant does not present any evidence at the evidentiary hearing from witnesses a defendant claims would have been helpful in trial. *Gore v. State*, 846 So.2d 461, 469-470 (Fla. 2003). Jones presented no witnesses at the evidentiary hearing to substantiate his claim that the amount of crack cocaine in his possession was consistent with personal use and, therefore, Jones waived his claim. *Ferrell v. State*, 917 So.2d 163, 173 (Fla. 2005).

In summary, the ruling of the state court in this case did not result in a decision that was contrary to, or involved an unreasonable application of, United States Supreme Court law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, Jones has not presented clear and convincing evidence to rebut the presumption of correctness of the trial court's findings.

Ground four does not warrant habeas corpus relief.

## GROUND FIVE

On March 8, 2011, Jones sought leave to amend his petition to add an additional claim (Ground Five). On April 5, 2011, this Court granted Jones's motion for leave to

amend his petition. Jones argues in ground five that trial counsel was ineffective for failing to object or move to suppress the evidence of multiple small ring baggies and that the issue of the baggies was touched upon briefly in the evidentiary hearing but the final order denying Jones's motion for postconviction relief "failed to mention the issue of multiple baggies." (Doc. 12). In other words, Jones claims the state court did not address his contention that trial counsel was ineffective for failing to challenge, either through objection or motion to suppress the evidence of multiple baggies in a report by the FDLE analyst, Ms. Deakin, in denying relief on ground two after an evidentiary hearing.

Although Jones faults the state court for not elaborating on his contention in denying ground two, it is the result which this Court addresses in the AEDPA analysis. A habeas court's focus pursuant to the "unreasonable application" test under AEDPA should be on the ultimate legal conclusion that the state court reached and not on the state court's reasoning behind its determination. *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011). Here, the state court found that Jones failed to present any evidence of tampering and consequently failed to demonstrate how counsel's alleged deficient conduct resulted in prejudice.

Moreover, although an ineffective assistance of counsel claim is a federal constitutional claim, which this Court considers in light of the clearly established rules of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when the validity of the claim that counsel failed to assert is clearly a question of state law, the Court must defer to the state's construction of its own law. *See Will v. Secretary For Dept. of Corrections*, 278 Fed.Appx. 902, 908 (11th Cir. 2008), citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it

decide[d] the validity of [the petitioner's] underlying state law claims")(superseded on other grounds); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them ..."). Put another way, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation)

In Florida, relevant physical evidence is admissible unless there is an indication of probable tampering. *Peek v. State*, 395 So.2d 492, 495 (Fla.1980). In Jones's case, there was no indication of tampering with regard to the cocaine. This ground fails under *Strickland*'s prejudice prong. With respect to his underlying issue, Jones fails to plead facts showing that there was probable tampering with the cocaine, and his speculation does not suffice to show there was any reasonable probability of a different outcome had counsel pursued suppression as now proposed. *See e.g., Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation). Jones does not overcome the correctness of the state"s court"s factual findings in denying his ground by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor does he overcome the strong presumption that counsel"s decisions regarding the admissibility of the cocaine were in the exercise of professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Thus, ground five can be denied under either prong of *Strickland*.

In addition, Jones did not develop any facts about the discrepancies in two reports concerning multiple baggies to support ground two at the evidentiary hearing. Jones was afforded an opportunity to develop his factual underpinnings, and he failed to do so when given the opportunity at the state evidentiary hearing. All the facts developed by Jones concerning multiple baggies were in reference to ground four, where Jones argued that counsel was ineffective for failing to depose the FDLE lab analyst and to properly cross-examine her at trial. Jones alleged in ground four that counsel was obligated to establish chain of custody and discussed two reports, one which indicated one baggie and another that indicated there were multiple bags.

The state court found, in denying ground four, that:

> On cross-examination, when asked whether the fact that the police report said single baggie but Ms. Deakin's report said several baggies was something he would have to inquire about, he responded as follows:
>
> > KUSKE: Maybe and maybe not. And let me explain why I say that. Because you never challenge something you're opening the door for other potential arguments. If they're going to get on the stand and talk about one or two baggies – and I can't recall how the case was opening up and flowing -- you may not want to get into the fact that there was[sic] more baggies, because that looks more like he's selling. You may not want him -- depending on the testimony –
>
> (*See* May 8, 2008, transcripts, pps. 46-47, attached). He further elaborated as follows:
>
> > KUSKE: What comes out first? In other words, what's come out first? If they've said -- we've gone through already, then how do you sell it, you know, the cop gets up and says, well, drugs are normally sold in this fashion, bagged like this. And I don't know because you have it, if you can help me out with it. I might come back and say something like, well, are drugs sold like that. That's the way any drug dealer would sell it, then any drug user would buy it like that. You see what I'm saying? If that's the only way it's sold, then I'm assuming, that's the only way

>you're going to buy it. And if that point rang true, and it seemed like -- and again, I'm not on trial at this moment -- but if I'm looking at the jury's faces and it seems like that was a good hit, maybe we don't want to go this way or we don't want to go that way.
>
>(*See* May 8, 2008, transcripts, pps. 47-48, attached).
>
>After reviewing the allegations, the testimony, evidence, and argument presented at the May 8, 2008, evidentiary hearing, the court file, and the record, the Court finds by Mr. Kuske's own admission, he did not depose Ms. Deakin. The Court further finds Mr. Kuske made a strategic decision not to depose Ms. Deakin. However, the Court finds Ms. Deakin never testified at trial that there was 22 grams. (See trial transcript, pps. 111-117, attached). Therefore, the Court finds Defendant failed to demonstrate how counsel's alleged deficient conduct resulted in prejudice when Ms. Deakin never testified at trial that there was 22 grams, and the clerk weighed the drugs at 21.3 grams, which was within one gram of what the police report reflected. As such, no relief is warranted upon this claim.

(Exhibit 13).

Jones does not overcome the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

Ground five does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Jones's petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Jones and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 9, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Clarence Jones